# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

**CLEON BROWN,**
    Plaintiff

v.

**CITY OF HASTINGS, JEFF MANSFIELD,
JEFF PRATT, DALE BOULTER,
KRIS MILLER and JOSH SENSIBA**
    Defendants

Hon.
Magistrate
Case No:

_____/

**BOYLANLAW, P.C.**
By:    Karie H. Boylan (P55468)
Attorney for Plaintiff
410 W. University, Suite 201
Rochester, Michigan 48307
Phone:    (855) 926-9526
Fax:    (855) 326-9526
E-Mail:    karie@boylanlaw.net
_____/

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff states:

1. Plaintiff is a City of Hastings Police Sergeant.



1

2. This is an action to enforce civil rights arising out of Plaintiff's employment relationship with Defendant City of Hastings and Defendants sued in their individual capacities, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Michigan Elliott-Larsen Civil Rights Act, MCL 27.2101 et seq; the Michigan Whistleblowers' Protection Act, MCL 15.361 et seq; Intentional Infliction of Emotional Distress; and, other claims that may be refined or uncovered in the course of these proceedings.

3. Jurisdiction is proper. 42 U.S.C. 2000e-5 and 28 U.S.C. 1331, 1343(a)(4).

4. Defendant City of Hastings is a Michigan municipal corporation.

5. Frank Campbell is the former Hastings Mayor (retired January 2017).

6. Defendant Jeff Mansfield is the Hastings City Manager.

7. Defendant Jeff Pratt is Hastings Police Chief.

8. Defendant Dale Boulter is Hastings Deputy Chief of Police.

9. Eric Ingram is the Hastings Police Detective-Sergeant.

10. Dennis Lajcak, Defendant Kris Miller and Plaintiff Cleon Brown are Hastings Police Patrol Sergeants.

11. Defendant Josh Sensiba, Karen Larson, Matt Doster, Shawn Olmstead and Kraig Dingman, Brian Hansford and Kendra Backing are Hastings Police Officers.

12. The Hastings Police Chief is responsible for the daily function of the police department, supervision of Sergeants, overseeing the work performance of all patrol officers and office staff. His administrative tasks include developing policies and procedures, monitoring compliance and training in those policies, administering disciplinary action, acting as a liaison between the police department and others.

13. One Hastings Patrol Sergeant is assigned to each of three shifts. Patrol Sergeants have the responsibility of supervising the patrol officers assigned to their respective shifts. They are directly responsible for the work ethic and performance of their subordinates. Sergeants act as one of the two or three officer teams that make up every shift. Sergeants patrol, respond to complaints, and enforce traffic regulations in the same manner as patrol officers, but also carry an added responsibility of supervising the shift's activities.

14. The events giving rise to this cause of action occurred in the County of Barry, Western District of Michigan and all parties reside in the Western District.

**BACKGROUND FACTS**

15. Plaintiff Cleon Brown graduated from Maple Valley High School in Vermontville, Michigan in 1989.

16. After graduating from High School, Plaintiff enlisted in the United States Army and served in Korea during the Gulf War. His assignments included MOS: 19D Cavalry Scout, 19K, 13M, and Military Police.

17. MOS 19D Cavalry Scouts are the "eyes and ears" of the commander during battle, their duty is to engage the enemy in the field, track and report enemy activity and direct the employment of weapons systems to enemy locations. MOS 19K is an Army M1 Armor Crewman (i.e., a crew member aboard an M1 Abrams tank). MOS 13M is a multiple launch rocket system crewmember, responsible for operating and maintaining the multiple launch rocket system. 13Ms support infantry and tank units by supplementing cannon artillery during combat.



18. Plaintiff received two campaign medals in Korea for combat operations.

19. Due to injuries suffered in combat, the Army determined Plaintiff was 30% combat disabled. After serving seven years in the Army, National Guard, and Army Reserves, Plaintiff was awarded an honorable discharge.

20. Plaintiff studied Fire Science and Criminal Justice in college.

21. Plaintiff was hired as a Hastings City Police Officer in 1998 and successfully completed the Field Training Officer in record time, with flying colors.

4

22. Plaintiff is a decorated Hastings Police Sergeant and recipient of two "life-saving" awards.

23. On January 31, 2016, Plaintiff was promoted to the position of Patrol Sergeant in charge of the afternoon shift (4:00 pm to 12:00 midnight).

24. In 2016, Plaintiff took a genetic test through "Ancestry.com". The test revealed Plaintiff is 18% African American. Plaintiff did not know that before.

25. In the fall of 2016, Plaintiff proudly told other Hastings employees of the test and result (i.e., that he is 18% Africa American).

26. After he learned Plaintiff was African American, Chief Pratt called Plaintiff "Kunta" in the main office in the presence of Defendants Miller and Sensiba plus three subordinate police department employees.

27. Kunta Kinte (c. 1750 – c. 1822), is a character in the novel "Roots: The Saga of an American Family by American author Alex Haley." Haley claimed Kunta Kinte was based on one of his ancestors: a Gambian man who was born in 1750, enslaved and taken to America and who died in 1822.

28. After being called "Kunte" Plaintiff exclaimed in disbelief: "I cannot believe you just called me that!" Defendants Pratt, Miller and Sensiba all laughed.

29. After learning Plaintiff was African American, some police department employees started whispering "Black Lives Matter" while pumping their fists as they walked past Plaintiff.

30. After Plaintiff told Mayor Campbell he was African American, Mayor Campbell said: "Oh, you'll be alright".

31. Eight days later, Plaintiff and another officer were walking out of the police department when they encountered Mayor Campbell. Mayor Campbell saw Plaintiff, smiled, and said: "Hey, I got a joke for you guys" and proceeded to tell a racist joke using the word "Negroid" at least two or three times.

32. Every December, a Christmas tree is brought out and displayed in the police department for all employees and members of the public to see. Every member of the department has a stocking with his or her name written on it, hung from the tree. The tree is set up in the main office near the public entrance.

33. This is a photo of the Christmas tree taken on December 11, 2016. Upon closer inspection, one can see the African American Santa face figurine that Defendant Miller put in Plaintiff's stocking with "18%" written on it




34. After Plaintiff complained about the figurine, Defendant Miller used the phrase "Native American" while talking to another officer. Plaintiff was walking by and heard what Defendant Miller said. Defendant Miller saw Plaintiff and said in a sarcastic tone: "I better be careful, I don't want to *offend* anyone".

35. On January 4, 2017, Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission.

36. Shortly thereafter, Defendants became aware of the EEOC complaint.

37. Purportedly "investigating" Plaintiff's EEOC complaint, Defendants Pratt and Boulter conducted highly coercive, offensive, intimidating employee interviews asking only leading questions. Sometimes together, sometimes separately.

38. During one interview, Defendant Pratt sternly asked one witness in a menacing tone: "You **_never_** heard me call anyone Kunta, **_did you……_**?"

39. One officer referred to Defendant Pratt's interview as "The most awful experience in my entire career".

40. After Defendants learned of the EEOC Complaint, Defendants "unfriended" Plaintiff from their Facebook pages. Defendants Pratt and Miller also "unfriended" and "blocked" Plaintiff from Hastings' cadet officers' Facebook page.

41. In February of 2017, for the first time, Plaintiff was not allowed to play in the annual basketball game between Hastings cadets and police officers. Plaintiff is not being allowed to play in a departmental charity game on April 26th either.

42. Shortly after he was promoted to Sergeant in 2016, Defendant Pratt promised Plaintiff that the department would send him to an 80 hour Sergeants' training scheduled to begin April 1, 2017. On March 23, 2017, Defendant Boulter asked Plaintiff to cancel his registration for Sergeant's school. Plaintiff refused.

43. On March 24, 2017, Defendant Boulter told Plaintiff he would not be allowed to attend mandatory TASER instructor recertification training.

44. On March 7, 2017, Plaintiff and another officer were walking past City Manager Jeff Mansfield. Plaintiff said to the Manager: "Have a good night". The Manager ignored Plaintiff but looked at the other officer and said "Hi" to him. The other officer commented to Plaintiff: "He didn't even say hello to you!"

45. On March 23, 2017, Plaintiff was walking downstairs and came upon Manager Mansfield in the stairwell. Plaintiff said: "Hi, how are you?" Manager Mansfield turned and stared at Plaintiff. Without saying a word, Manager Mansfield walked through the door at the end of the stairs and let it close behind him. He did not hold the door open for Plaintiff who had both hands full carrying two large bags.

46. On March 17, 22, 29, 2017, and many other days, Defendant Pratt either ignored Plaintiff altogether or was curt in answering Plaintiff's questions. Defendant Pratt also asked Plaintiff to resign as Sergeant and return to patrol officer.

47. The remaining Defendants responded to Plaintiff's greetings by either ignoring him or curtly responding with a monosyllable "Yup".

8

48. On March 15, 2017, Defendants Pratt and Boulter had one-on-one conversations regarding police business with each and every employee, on or off duty, except Plaintiff. They have never discussed the same issues with Plaintiff.

49. On March 19 and April 1, 2017, when he came on duty, Plaintiff tried to engage Defendants Miller and Sensiba in a conversation regarding what had happened during the previous shift. They refused. As they were leaving, Plaintiff said: "Have a good night". They walked past him without saying a word.

50. On April 1, 2, 6, 7, 8, 2017, and other days after the EEOC complaint, when Plaintiff arrived to work the afternoon shift, Plaintiff asked Defendant Miller and/or Sensiba if there was any information to pass along from the day shift to the afternoon shift. Defendants consistently responded with monosyllable "Na" or "Nope". Prior to the EEOC complaint, there had *always* been conversations between Plaintiff and Defendants at shift change, even if purely anecdotal.

51. On April 8, 2017, Plaintiff asked if there were any "pass ons" from the day shift to afternoon shift. The answer was the familiar: "Na". When Plaintiff's afternoon shift subordinate patrol officer Kendra Backing walked into the room, Defendant **[Sergeant]** Miller told **her** "There's a [prisoner to] pickup in Bay City, they'll hold him until after 5:00 am". That is the precise type of information police protocol requires be passed on directly from one shift's supervisor (Miller) to the next shift's supervisor (Plaintiff). It is not discretionary.

9

52. Based on the openly hostile, retaliatory behaviors displayed by the Defendants (the City Manager, Police Chief, the Deputy Chief, one of four Sergeants, and one of seven Officers), and tacit approval of Defendants' conduct by many other Hastings officers, it is more likely than not, Plaintiff will not have adequate back up in the event of an emergency. He could be seriously hurt.

53. Defendants, and their supporters in the department, have created an openly hostile, discriminatory, stressful work environment for Plaintiff.

54. On March 18, 2008, Plaintiff was diagnosed with gastrointestinal reflux disease (GERD). Prior to the harassment, Plaintiff's GERD was controlled with low dosage medications. The harassment he experienced at work caused stress, which caused Plaintiff's stomach to produce more acid, which aggravated the GERD.

55. November 30, 2016, Plaintiff was diagnosed with Barrett's Esophagus ("Barret's"), a rare, more serious form of GERD.

56. To treat Plaintiff's Barrett's, doctors prescribed the highest recommended dosage of medication and ordered Plaintiff to change his diet and sleep while sitting straight up (gravity helps keep gastric acid in the stomach).

57. In 2017, the prolonged stress at work caused excess stomach acid to backflow into Plaintiff's esophagus and into his mouth causing painful, open sores to develop in his mouth and on his tongue. He still has them as of today.

58. In 2017, Plaintiff started counseling as a result of Defendants' conduct.

59. Plaintiff is a member of a protected class (African American) who engaged in protected conduct (objecting to the racist comments and African American Santa internally and filing a complaint with the EEOC).

60. Defendants' adverse actions as outlined above was motivated, in whole or in part, by race/color/national origin and in retaliation for protected conduct.

## COUNT I
### Title VII of the Civil Rights Act of 1964

61. Plaintiff incorporates the preceding paragraphs by reference herein.

62. Plaintiff is an "employee" and Defendants are "employers" within the meaning of 42 U.S.C. § 2000e.

63. Defendants' conduct constitutes "unlawful employment practices" within the meaning of 42 U.S.C. §§ 2000e-2(a), (d), (m) and 2000e-3.

64. Plaintiff filed a charge with the EEOC under section 2000e-5.

65. Plaintiff opposed Defendants' discriminatory conduct and also participated in Title VII proceedings.

66. Defendants engaged in unlawful intentional discrimination and Plaintiff may recover compensatory and punitive damages, in addition to other relief.

67. Defendants' violations of Title VII proximately caused Plaintiff to suffer damages as alleged in this Complaint.

## COUNT II
### The Civil Rights Act of 1866, 42 U.S.C. § 1981

68. Plaintiff incorporates the preceding paragraphs by reference herein.

69. Plaintiff is a "person" within the meaning of 42 U.S.C. § 1981.

70. At all relevant times, Defendants were acting under "color of law".

71. Defendants' aforementioned conduct deprived Plaintiff of the same right to make and enforce contracts, be a party, give evidence and to the full and equal benefit of all laws and proceedings as is enjoyed by white citizens.

72. Defendants' aforementioned conduct constitutes retaliation.

73. Defendants' violations of the Civil Rights Act of 1866 proximately caused Plaintiff to suffer damages as alleged in this Complaint.

## COUNT III
### The Civil Rights Act of 1871, 42 U.S.C. § 1983

74. Plaintiff incorporates the preceding paragraphs by reference herein.

75. Plaintiff is a "citizen" within the meaning of 42 U.S.C. § 1983.

76. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

77. Defendants are being sued in their individual and official capacities.

78. At all relevant times, Defendants were acting under "color of law".

79. Defendants Mansfield and Pratt are policy makers for Defendant City.

80. Defendants Mansfield and Pratt's discriminatory and retaliatory conduct constitutes Defendant City's official policy. It occurred in the presence of subordinate employees and was the moving force behind subsequent discriminatory, harassing and retaliatory conduct by subordinate employees.

81. Defendants City, Mansfield, Pratt and Boulter failed to train, failed to supervise, failed to discipline, etc. Hastings employees regarding discriminatory, harassing and/or retaliatory conduct. Chief Pratt was never investigated or disciplined for calling Plaintiff "Kunte" in front of several subordinate employees. Sergeant Miller was never investigated or disciplined for placing the African American Santa in Plaintiff's stocking and writing "18%" on it. As a matter of fact, no employee has been investigated or disciplined for any discriminatory, harassing, or retaliatory conduct alleged in this Complaint. Not surprising in light of the fact that the Mayor, City Manager, Chief of Police, Deputy Chief and one of four Sergeants are the primary instigators of the discrimination, harassment and/or retaliation.

82. The Hastings' police department's most recent "policy and procedure" regarding harassment under Title VII and Elliott-Larsen is dated March 24, 1992.

83. In more than twenty years, the Hastings Police Department has never offered, or mandated, employee training in discrimination, harassment, or retaliation.

84. Defendants' aforementioned conduct caused deprivation of rights, privileges, and/or immunities secured by the Constitution and federal laws.

85. The failure to train, failure to supervise, failure discipline and/or failure to promulgate and/or enforce anti-discrimination policies or procedures, etc. was the moving force behind the constitutional deprivations alleged in this Complaint.

86. The contours of rights at issue in this lawsuit were clearly established at the time of Defendants' unlawful conduct.

87. The individual Defendants are not entitled to qualified immunity.

88. Defendants' violations of the Civil Rights Act of 1871 proximately caused Plaintiff to suffer damages as alleged in this Complaint.

## COUNT IV
### The Michigan Elliott-Larsen Civil Rights Act, MCL 27.2101 et seq

89. Plaintiff incorporates the preceding paragraphs by reference herein.

90. Plaintiff's "race", "color" and "national origin" is African American within the meaning of MCL 27.2101, et seq.

91. Defendants are "employers" within the meaning of MCL 27.2201(a).

92. Defendants' conduct constitutes "prohibited practices practices" within the meaning of MCL 27.2202(a) and (b).

93. Defendants' conduct constitutes "prohibited conduct" within the meaning of MCL 37.2701.

94. Defendants' engaged in unlawful intentional discrimination and Plaintiff may recover compensatory and punitive damages for injury or loss caused by each violation of the Michigan Elliott-Larsen Civil Rights Act, in addition to other relief.

95. Defendants' violations of the Michigan Elliott-Larsen Civil Rights Act proximately caused Plaintiff to suffer damages as alleged in this Complaint.

## COUNT V

### The Michigan Whistleblowers' Protection Act, MCL 15.361 et seq

96. Plaintiff incorporates the preceding paragraphs by reference herein.

97. Plaintiff is an "employee" within the meaning of MCL 15.361(a).

98. Defendants are "employers" within the meaning of MCL 15.361(b).

99. The City of Hastings, Frank Campbell, Jeff Mansfield, Jeff Pratt, Dale Boulter, and EEOC are all a "public body" within the meaning of MCL 15.361(d).

100. Defendants' aforementioned conduct is prohibited by MCL 15.362.

101. Defendants' violations of the Michigan Whistleblowers' Protection Act proximately caused Plaintiff to suffer damages as alleged in this Complaint.

### COUNT VI
### Intentional Infliction of Emotional Distress

102. Plaintiff incorporates the preceding paragraphs by reference herein.

103. Defendants' aforementioned conduct is extreme and outrageous.

104. At all relevant times, Defendants' acted with intent or recklessness.

105. Defendants' conduct proximately caused damages as alleged in this Complaint which include, but are not limited to "severe emotional distress.

### DAMAGES

106. Plaintiff incorporates the preceding paragraphs by reference herein.

107. Defendants are attempting to constructively discharge Plaintiff.

108. Defendants' unlawful conduct will likely increase due to the filing of this civil action.

109. Plaintiff may not be medically capable of continuing his employment due to Defendants' continued discrimination, harassment and retaliation.

110. Plaintiff's annual salary and benefit package is worth more than $75,000.00. Because he is approaching retirement age, with increasing seniority, his annual income will probably be more every year, for the next several years.

111. Plaintiff has been forced to take sick time off work in the past due to exacerbation of GERD, Barrett's, and other mental/physical conditions proximately caused by Defendants' unlawful conduct. Plaintiff will take more sick time off work in the future for the same reason.

112. Plaintiff has a minimum of five (5) years and ten (10) months until he reaches the minimum years of service and age to retire. If he continues working longer to reach maximum retirement income and benefits, he could retire earning eighty percent (80%) of his last five years average compensation plus benefits.

113. Plaintiff has incurred expenses for medical and mental health treatment and prescription medications as a result of the aforementioned conduct.

114. Plaintiff has suffered lost wages (past/present/future) as a result of the aforementioned conduct. His wage loss will likely exceed $500,000.00.

115. Plaintiff has suffered, and will continue to suffer, bodily injury and severe mental/emotional distress, anxiety, depression, loss enjoyment of life, and more as a result of the aforementioned conduct.

116. Plaintiff has incurred attorney fees and costs as a result of the aforementioned conduct. Plaintiff will incur witness fees in the future.

117. Defendants are liable for a civil fine under MCL 15.365.

118. Defendants are liable for separate damages for each violation of federal and state law alleged in this Complaint.

119. Defendants are liable for punitive and/or exemplary damages.

120. Defendants have caused Plaintiff to suffer additional damages that may be developed more fully at some time in the future.

WHEREFORE, Plaintiff requests injunctive relief in the form of a Court Order prohibiting future acts of discrimination, harassment and/or retaliation, an award of compensatory plus punitive/exemplary damages in excess of Five Hundred Thousand Dollars ($500,000.00), and all additional forms of relief the jury finds just and fair.

Respectfully submitted,

/s/ Karie H. Boylan
**BOYLANLAW, P.C.**
By: Karie H. Boylan (P55468)
Attorney for Plaintiffs
410 W. University, Suite 201
Rochester, Michigan 48307
Phone: (855) 926-9526
Fax: (855) 326-9526

Dated: April 11, 2017        E-Mail: karie@boylanlaw.net

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**CLEON BROWN,**

    Plaintiff

v.

**CITY OF HASTINGS, JEFF MANSFIELD,**
**JEFF PRATT, DALE BOULTER,**
**KRIS MILLER and JOSH SENSIBA**

    Defendants

Hon.
Magistrate
Case No:

_____/

**BOYLANLAW, P.C.**
By:    Karie H. Boylan (P55468)
Attorney for Plaintiff
410 W. University, Suite 201
Rochester, Michigan 48307
Phone:    (855) 926-9526
Fax:    (855) 326-9526
E-Mail:    karie@boylanlaw.net
_____/

## PLAINTIFF'S JURY DEMAND

Plaintiff herein requests and demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Karie H. Boylan
**BOYLANLAW, P.C.**
By:    Karie H. Boylan (P55468)
Attorney for Plaintiffs
410 W. University, Suite 201
Rochester, Michigan 48307
Phone:    (855) 926-9526
Fax:    (855) 326-9526

Dated: April 11, 2017    E-Mail:    karie@boylanlaw.net